IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF GEORGIA

MACON DIVISION

| | |
|---|---|
| RAY DELL'ORFANO, et. al. | No. 5:05-CV-00245 CAR |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| vs. | |
| IKON OFFICE SOLUTIONS, INC., | |
| Defendant. | |

## AGREED MOTION FOR APPROVAL
## OF COLLECTIVE ACTION SETTLEMENT

### I.   INTRODUCTION

By this motion, Ray Dell'Orfano, on behalf of himself and other similarly situated ("Plaintiffs") and Defendant IKON Office Solutions, Inc. file this Agreed Motion for Approval of Collection Action Settlement and would show the Court as follows:

Plaintiffs Scott Hall and Ray Dell'Orfano filed this collection action on behalf of themselves and others similarly situated on March 11, 2005 alleging that Defendant violated the Fair Labor Standards Act ("FLSA"). Plaintiff Hall was involuntarily dismissed from this action. After Plaintiff's Motion for Class Notice, the Court permitted individuals to opt-in to this matter. 1,224 individuals filed consents. The Class is comprised of those 1,224 opt-ins and one Named Plaintiff.

The parties exchanged discovery and conducted depositions. The parties negotiated a settlement in advance of trial and now jointly seek approval of this settlement.

## II. ALLEGATIONS

### A. Dell'Orfano's IKON Employment

IKON employed Plaintiff Ray Dell'Orfano as a Customer Sales Representative ("CSR") from April 3, 2003, until January 30, 2006. For much of his employment, IKON paid Dell'Orfano under the fluctuating workweek method of calculating overtime. Dell'Orfano alleges that he worked overtime hours ranging from between 6 and 35 hours in the majority of pay periods in which he worked during his employment by IKON. He further alleges that IKON improperly calculated his regular rate of pay.

### B. Calculation Of Regular Rate Of Pay

Dell'Orfano alleges that he and others regularly worked overtime hours in pay periods in which they earned both a salary/hourly rate and other forms of compensation. Dell'Orfano alleges that IKON failed to include the other forms of compensation when calculating regular rate of pay.

An employer must include all compensation earned in a pay period when calculating an employee's regular rate of pay in order to calculate overtime wages. 29 USC § 207(e). The definition of "regular rate of pay" is set forth in the FLSA at 29 USC § 207(e), which provides that "the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of the employee." Calculation of regular rate of pay requires an employer to include all compensation paid during a pay period, with the exception of certain types of compensation, such as bonus payments calculated as a percentage of income. Id. IKON asserts that calculations it performed to determine regular rate of pay properly excluded bonus compensation paid class members, an assertion Plaintiff contends IKON is unable to demonstrate due to poor payroll recordkeeping. The settlement reached regarding the regular rate of pay claim reflects the parties' assessment of the relative risk presented by IKON's safe harbor bonus as percentage of wages defense.[1]

#### 1. Calculation of Dell'Orfano's Overtime Wages Under The Fluctuating Work Week Rule

IKON paid certain employees, including Dell'Orfano, under the fluctuating work week (FWW) (pay method) policy. This method as authorized by the FLSA pays at the rate of .5 times the regular rate of pay instead of 1.5 times the regular rate of pay. Plaintiffs allege that their base

---

[1] Declaration of Daniel H. Qualls In Support of Joint Application, et. al.(Qualls App. Decl.) ¶9

salary was reduced in those pay periods where they worked less than 40 hours per week. IKON denies these allegations and instead asserts that it never made deductions from wages but did make deductions from leave bank entitlements for any absences – a practice specifically permitted by the FLSA.

Plaintiff, as challengers of the legitimacy of IKON's FWW plan as applied to CSR class members, bears the burden of demonstrating that IKON failed to comply with the terms of 29 C.F.R. 778.114 governing employer FWW plans. Teblum v. Eckerd Corp. of Fla., Inc., 2006 U.S.Dist. LEXIS 6404 (D.Fla. 2006). For an employer to pay workers reduced overtime premium pay under a FWW plan, a clear and mutual understanding must exist between employer and employee regarding how a fluctuating work week plan operates. Id. IKON contends that such understanding can be evidenced by pay stubs received by employees paid under a FWW plan, citing as authority Davis v. Friendly Express, Inc., 2002 U.S. Dist. LEXIS 27098, 3-4 (D.Ga. 2002). Further, IKON contends that Agreements Regarding Fluctuating Work Week signed by 29 of 62 CSR class members further evidences with existence of a mutual understanding between IKON and CSR's regarding how IKON's FWW plan operated.[2] Plaintiff's dispute IKON's expansive interpretation of the Court's decisions in both Teblum and Davis, and contest the assertion of the so-called Agreements Regarding Fluctuating Work Week claimed by IKON.

### C. Order Authorizing Collective Proceedings Limited To Consents Filed As Of August 25, 2006

On August 18, 2006, the Court entered its Order On Plaintiff's Motion For Class Certification And Defendant's Motion For Sanctions. In its Order, the Court permitted Plaintiff and IKON employees who had submitted opt-in forms to the Court to proceed with their respective claims, and set an opt-in deadline of August 25, 2006. As of August 25, 2006, 1,224 persons filed opt-in forms. Of these, 355 persons filed opt-in consents within the statute of limitations and suffered damages as alleged in the Complaint.

---

[2] Qualls App. Decl. ¶7

### D.  Consents Filed Within Three Year FLSA Statute Of Limitations And Loss Analysis Performed By Class Counsel

On October 26, 2006, and November 22, 2006, Defendant IKON produced records for those class members with filed consents in the following categories: 1) payroll records for persons employed by IKON and classified as a non-exempt employee depicting payment of regular pay, other compensation, and overtime wages in a single pay period and the present (excluding California employees); and 2) payroll records for persons employed by IKON as a Customer Service Representative.[3]

Upon receipt of these payroll records, Class Counsel performed a damage analysis for persons who filed timely consent to join forms employed by IKON and classified as a non-exempt employee receiving regular pay, other compensation, and overtime wages in a single pay period within three years of the applicable opt-in consent filing date. The analysis performed recalculated regular rate of pay to include other compensation excluded by IKON when original regular rate of pay calculations were performed for those persons who filed consent to join forms within 3 years of employment by IKON.[4] The analysis performed revealed 355 persons for whom a recalculation of overtime pay was required as determined by class counsel. The remaining 875 opt-in Plaintiffs worked in periods outside the three year statutory limit or did not earn other compensation requiring a recalculation of overtime wages.

Class counsel also performed a loss analysis, applying the same statute of limitations parameters of persons employed by IKON as a Customer Service Representative who timely filed consent to join forms. Such individuals are included in the group of 355 persons to receive settlement payments.

### E.  Terms Of Proposed Settlement

On January 11, 2007, the parties signed a written Settlement Agreement.[5] The breakdown of settlement proceeds to each individual Plaintiff is Exhibit 1 to the Settlement Agreement.

---

[3] Qualls App. Decl. ¶ 6.
[4] Qualls App. Decl. ¶ 7.
[5] See, Stipulated Settlement executed January 11, 2007, Qualls App. Decl. ¶ 4, Exhibit (EX) A. The settlement agreement was reached after Class Counsel researched and evaluated federal law governing the claims in the action and conducted discovery concerning IKON's compensation policies as applied to class members, the identities of such Class Members, the hours they worked and the compensation they were paid. After such research, evaluation, and investigation, Class Counsel and representative Dell'Orfano, consider it to be in the best interests of the class to

### III. ARGUMENT

An FLSA claim, except in two circumstances, cannot be waived or settled. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 706 (1945). The exceptions are 1) that the Secretary of Labor can supervise payment of back wages or 2) the employer and employee present the proposed settlement to the district court for approval. 29 U.S.C. § 215(b). Before the court may approve a settlement in a collective action brought under the FLSA, it must first determine whether the settlement involves the resolution of a bona fide dispute over an FLSA provision and then decide whether the settlement is fair and reasonable. Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-55 (11th Cir. 1982); Jarrard v. Southeastern Shipbldg. Corp., 163 F.2d 960 (5th Cir. 1947); Stalnaker v. Novar Corp., 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003) (quoting Lynn's Food Stores, Inc., 679 F.2d at 1354).

There is an initial presumption of fairness when the parties negotiated a proposed class settlement at arm's length. Spencer v. Comserv Corp., [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) Para. 93,124 at 95,528 (D. Minn. 1987); Biben v. Card, 1991 U.S. Dist. LEXIS 18448, 3-4 (D. Mo. 1991). One establishes this presumption if the court finds that the parties arrived at the settlement through arm's length bargaining, the parties conducted sufficient discovery informing the parties and the court of the issues, counsel for the parties are experienced in similar litigation, and the number of objectors is not large compared to the class size. Murillo v. Texas A & M Univ. Sys., 921 F. Supp. 443, 446 (D. Tex. 1996). The recommendation by Plaintiff's counsel and the good faith bargaining between the parties also militates heavily in favor of approving the settlement. "Courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching . . ." (Citation omitted). Id. at 446.

#### 1. The Proposed Settlement Is Fair And Reasonable

Courts scrutinize FLSA settlements for fairness and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food, 679 F.2d at 1353, 1355. Even if a potential recovery might be greater, a reviewing court will not disturb a determination that a significantly smaller settlement amount is fair and reasonable when the risk of actual recovery is significant. Principe v. Ukropina (In re Pacific Enters. Sec. Litig.), 47 F.3d 373, 377-378 (9th Cir. 1995).

---

settle claims presented in accordance with the terms of the proposed Stipulation Of Settlement. Qualls App. Decl., ¶

### a. The Parties Conducted Settlement Negotiations At Arms-Length And In Good Faith

Class Counsel conducted settlement negotiations with IKON beginning in early December, 2006. At all times, the parties negotiated in an adversarial manner, at arms length and in good faith, adversarial.[6] Counsel for both parties have handled numerous FLSA individual and collective action lawsuits. On December 8, 2006, Class Counsel and IKON reached agreement on the terms of settlement, subject to Court approval, and signed a Stipulation of Settlement on January 12, 2007. The terms of settlement are the product of arms length adversarial negotiations conducted in good faith to achieve a settlement representing, in the judgment of Class Counsel, terms of settlement in the best interests of the class.[7] The parties each examined potential liability and damages based on the evidence developed.

### b. Contested Liability And Significant Risk Factors Absent Settlement

Significant risk factors militate in favor of the settlement reached between the parties.

Plaintiffs' contend that IKON failed to pay overtime wages based upon a properly calculated regular rate of pay, and failed to pay overtime wages based upon an overtime premium of one and one half times regular rate of pay. IKON strenuously contests Plaintiff's allegation, and asserts that at all times relevant to the class, class members overtime wages were calculated based upon a correct regular rate of pay, and that IKON's fluctuating work week policy in effect during the class period was both understood and agreed upon by class members. IKON further claims that CSR class members are exempt employees by virtue of the motor carrier exemption. While strongly contested by Class Counsel, IKON's contentions represent a significant risk to class wide recovery and militates in favor of the settlement reached.

The settlement amount to be paid for the regular rate of pay class claims represents a fair compromise. Class Counsel performed an analysis of the potential damages and, the settlement amount provides 87 % of the amount of unpaid wages claimed.

The settlement amount to be paid for the fluctuating work week (FWW) claims of class members represents a fair compromise of a sharply contested claim. IKON disagrees that any additional compensation is owed based on the fluctuating workweek payments. IKON

---

2.
[6] Qualls App. Decl. ¶ 6.
[7] Qualls App. Decl. ¶ 6.

vehemently contends that it properly followed all regulations regarding the fluctuating workweek. Class Counsel performed an analysis of the potential damages and the settlement amount provides approximately 50% of the principal amount of unpaid wages claimed. The settlement amount to be paid these class members reflects substantial risks (as discussed above) to class recovery created by the claims and assertions of the parties and represents, in the opinion of Class Counsel, a fair compromise of CSR class member overtime claims.[8]

### 2. Class Counsel's Fee And Cost Request Is Reasonable

In class action litigation, Class Counsel is entitled to compensation for the delay in payment; the simplest way to compensate for the delay is to apply the current market rates with respect of all hours worked, plus an interest rate multiplier. Skelton v. General Motors Corp.; 860 F.2d 250, 255 n.5 (7th Cir. 1988). Applying this standard, Class Counsel's request for an award of attorneys fees is reasonable. Class Counsel has litigated this action since its inception on March 11, 2005. Legal services provided included initial case investigation, preparation of the complaint and amended complaint, legal research regarding regular rate of pay and fluctuating work week liability theories, preparation of oppositions to motions for summary judgment, motion to transfer venue, motion to dismiss, motion for sanctions, motion for class certification, motions to compel discovery (oral motions), preparation, travel and deposition attendance for Plaintiff and IKON 30(b)(6) witnesses, processing of 1,224 opt-in requests, and consultation with more than 200 individual class members nationwide.[9] Class Counsel's professional rate is $425.00 per hour. This rate has been award to Class Counsel for professional services in wage and hour class actions by both California state and federal courts.[10] Class Counsel has incurred professional fees of $246,857.50 through August 01, 2006.[11] Class Counsel expended profession time and costs on behalf of the class for over a two year period without compensation or reimbursement and without certainty of compensation or reimbursement.[12] Class Counsel fee request of $107,698 representing less than 40 percent of actual professional time expended by Class Counsel, is reasonable and should be granted. IKON does not oppose Class Counsel's fee request, further evidence of the reasonableness of the request.

---

[8] Qualls App. Decl. ¶ 9
[9] Qualls App. Decl. Id.
[10] Qualls App. Decl. Id.
[11] Qualls App. Decl. Id.
[12] Qualls App. Decl. ¶ 11.

Class Counsel's request for reimbursement of expenses is also reasonable and should be granted. Class Counsel expended cost of $25,996.71 through August 01, 2006.[13] Cost expended included charges for filing fees, photocopying, travel and deposition transcript costs, and postage charges for communications with both putative class and class members.[14]

## IV.  CONCLUSION

Accordingly, for the reasons stated, Plaintiff requests an order granting approval of the settlement between Plaintiff and Defendant IKON.

Respectfully Submitted,

Dated: February ___, 2007            **QUALLS & WORKMAN, LLP**

_____
Daniel H. Qualls (CA Bar # 109036)
Robin G. Workman (CA Bar # 145810)
QUALLS & WORKMAN, L.L.P.
244 California Street, Suite 410
San Francisco, CA 94111
Phone: (415) 782-3660
Fax: (415) 788-1028
Email: q-w@qualls-workman.com

_____
William Greg Dobson (GA Bar # 237770)
830 Mulberry Street, Suite 201
Macon, GA 31201
478-745-7700
Email: wmdobson@bellsouth.net

Dated: February ___, 2007

_____
Carrie B. Hoffman (Texas Bar # 00787701)
choffman@gardere.com
Ronald M. Gaswirth (Texas Bar # 07752000)
gaswirth@gardere.com
Maura I. Brady (Texas Bar # 24031759)
mbrady@gardere.com
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
Phone: 214-999-3000 Fax: 214-999-4667

---

[13] Qualls App. Decl. ¶ 9.
[14] Qualls App. Decl. Id.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Maura I. Brady    mbrady@gardere.com,

    Ronald M. Gaswirth    rgaswirth@gardere.com,

    Carrie B. Hoffman    choffman@gardere.com,

    W. Warren Plowden , Jr    warren.plowden@jonescork.com, jackie.getrum@jonescork.com

    Respectfully Submitted,

Dated: February ___, 2007

Daniel H. Qualls (CA Bar # 109036)
(dan@qualls-workman.com)
Robin G. Workman (CA Bar # 145810)
(robin1@qualls-workman.com)
QUALLS & WORKMAN, L.L.P.
244 California Street, Suite 410
San Francisco, CA 94111
Phone: (415) 782-3660/Fax: (415) 788-1028

ATTORNEYS FOR PLAINTIFFS AND
CLASS MEMBERS